**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Montye Fuse, a married man, | CV-07-2351-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Board of Regents, a political subdivision of the State of Arizona; Neal Lester, a married man, | |
| Defendants. | |

Plaintiff Montye Fuse brings this action alleging racial discrimination, retaliation, and First Amendment violations arising from the non-renewal of his employment contract. We have before us defendants Arizona Board of Regents ("ABOR") and Neal Lester's motion for summary judgment and statement of facts (docs. 65 & 66), plaintiff's response and separate statement of facts (docs. 74 & 75), and defendants' reply and response to plaintiff's separate statement of facts (docs. 78 & 79).

**I-Background**

Plaintiff is an African American male who taught in the English Department of Arizona State University ("ASU") beginning in 1997. On January 1, 2004, plaintiff began a three year appointment as a non-tenure track lecturer with ASU.

The decision process regarding whether plaintiff's contract would be renewed began in 2006 and involved five independent levels of review: the personnel committee; the

Department Chair; the Dean's Advisor Council; the Dean; and the University Vice Provost. The personnel committee and the Dean's Advisory Council unanimously recommended that plaintiff's appointment be renewed. In February 2006, Neal Lester, the English Department Chair, strongly recommended that plaintiff's appointment not be renewed. Although Lester, who is also African American, acknowledged plaintiff's teaching abilities, he recommended against renewal due to plaintiff's "consistently less than professional behavior and insubordinate and hostile manner," and attached a number of illustrative emails to his determination. DSOF, Ex. 5. In May 2006, the Dean also recommended that plaintiff's appointment not be renewed due to plaintiff's failure to cooperate with Lester. DSOF, Ex. 8. Based on these reviews, the University Vice Provost voted not to renew plaintiff's contract in October 2006. DSOF, Ex. 9. Plaintiff was informed that his contract would not be renewed on November 14, 2006.

In February 2007, plaintiff met with an Equal Employment Opportunity Commission ("EEOC") investigator, and he filed a formal charge against ASU alleging retaliation on May 29, 2007. PSOF, Ex. 5. Plaintiff received a right to sue letter in August 2007, and subsequently filed this action alleging: (1) racial discrimination by ABOR in violation of Title VII of the civil rights act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (2) retaliation by ABOR in violation of Title VII; and (3) First Amendment retaliation by Neal Lester under 42 U.S.C. § 1983.[1] Defendants now move for summary judgment on all claims.

## II-Racial Discrimination

Defendants argue that plaintiff's racial discrimination claim was not exhausted and is now time barred under 42 U.S.C. § 2000e-5(e). Before bringing this suit under Title VII, plaintiff was required to exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC or the appropriate state administrative agency. B.K.B. v.

---

[1]Plaintiff's complaint also includes three state law claims, which were dismissed on March 27, 2009 (doc. 67). In addition, to the extent that plaintiff's complaint includes a 42 U.S.C. § 1983 action for false arrest, that claim has been abandoned by plaintiff. Response at 14.

Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002). We only have subject matter jurisdiction over those "allegations of discrimination that either 'fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Id. at 1100 (quotation omitted).

Plaintiff's EEOC charge does not mark race as a theory of discrimination. However, to determine whether the allegations in plaintiff's complaint are "like or reasonably related to the allegations of the EEOC charge," we must look to the statement of facts. Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002) (quotation omitted). The facts in plaintiff's charge include that "[t]he lecturers were mainly White women, and [plaintiff] was the only Black lecturer in the group." PSOF, Ex. 5. Also, plaintiff told the EEOC investigator with whom he met to discuss his claim that, although he did not necessarily believe his case to be about race, he "wanted to discuss the matter with someone." DSOF, Ex. 16. Construing plaintiff's charge liberally, as we must, see Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990), it is reasonable that an EEOC investigation would have encompassed racial discrimination. We, therefore, conclude that subject matter jurisdiction extends to plaintiff's racial discrimination claim under Title VII.

Nonetheless, plaintiff's claim of racial discrimination is so devoid of proof that summary judgment for defendants is appropriate. To establish a prima facie case of racial discrimination, plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981). Plaintiff may establish an inference of discrimination by showing that: (1) he belongs to a protected class; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with the same qualifications were treated more favorably. Vasquez v. County of Los Angeles, 349 F.3d 634, 640 n.5 (9th Cir. 2003) (quotation omitted). The parties do not dispute that plaintiff is a member of a protected class and that he suffered an adverse employment action. Defendants contend, however, that plaintiff was not performing

according to ASU's legitimate expectations and that he cannot show any evidence that other employees with the same qualifications were treated more favorably. We agree.

Plaintiff relies on the recommendations of the personnel committee and the Dean's Advisory Council to show that he was qualified for the lecturer position. DSOF, Exs. 6 & 7. While these reports clearly note that plaintiff performed well as an instructor, they do not refute defendants' contention that plaintiff was not performing adequately because of his unprofessional behavior toward Lester, the Department Chair. Neither recommendation denies that plaintiff had engaged in hostile behavior toward Lester, and their tense relationship is explicitly noted by the Dean's Advisory Council. DSOF, Ex. 7. That these committees decided to recommend plaintiff's renewal despite his behavior toward Lester does not establish that Lester, the Dean, and the University Vice Provost unreasonably concluded that plaintiff's behavior impaired his job performance. See Lam v. Univ. of Haw., 40 F.3d 1551, 1564 (9th Cir. 1994) ("Personal animus, factional infighting and politics may influence and even determine certain faculty employment decisions, and are legally permissible if not praiseworthy bases for such decisions."). In addition, plaintiff has failed to show any evidence that other lecturers were treated more favorably than he.

Even if we conclude that plaintiff had shown a prima facie case, defendants have proffered a legitimate, non-discriminatory reason for the decision not to renew his contract–plaintiff's hostile and disruptive behavior. See Ogunleye v. Arizona, 66 F. Supp. 2d 1104, 1109 (D. Ariz. 1999) ("The use of insults, a harsh tone, and sarcasm . . . constitute legitimate, non-discriminatory reasons for the nonrenewal of an employee's contract."). Plaintiff, therefore, must show that defendants' reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Odima v. Westin Tucson Hotel Co., 991 F.2d 595, 599 (9th Cir. 1993) (citation omitted).

Plaintiff has offered no direct evidence that defendants were motivated by discriminatory intent, but attempts to establish pretext through circumstantial evidence. In particular, plaintiff relies on defendants' failure to provide an ASU policy describing "insubordination" or any specific directive that plaintiff declined to follow. To show pretext using circumstantial evidence, however, plaintiff must "put forward specific and substantial evidence challenging the credibility of the employer's motives." Vasquez, 349 F.3d at 642. Far from specific and substantial, plaintiff's reliance on the absence of a formal description of insubordination does not dispute defendants' evidence that plaintiff behaved in an aggressive and argumentative manner. Although personality conflicts are evident from the record, plaintiff's evidence does not support a reasonable inference that anyone involved with the contract renewal decision displayed any discriminatory animus based on race.

Accordingly, we conclude that plaintiff has failed to show a material factual dispute regarding his claim of racial discrimination and defendants are entitled to summary judgment.

### III-Retaliation

Plaintiff also claims that he was fired in retaliation for speaking out beginning in October 2005 against the allegedly discriminatory treatment of his colleague, Professor Milun, and forwarding two emails critical of ASU in March and May 2006. A burden shifting framework is also applied to plaintiff's retaliation claims. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124 (9th Cir. 2004). To establish a prima face case of retaliation, plaintiff must show that: "(1) he undertook a protected activity under Title VII;" (2) "his employer subjected him to an adverse employment action;" and (3) "there is a causal link between those two events." Vasquez, 349 F.3d at 646. Defendants do not challenge the first two prongs of the test, but argue that plaintiff cannot show a causal link between his allegedly protected behavior and ASU's decision not to renew his contract.

To establish causation, plaintiff must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his] firing and that but for such activity [he] would not have been fired." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,

1064-65 (9th Cir.2002). "[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." Id. at 1065. However, "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982) (citations omitted). Plaintiff argues that causation may be inferred in this case based on timing alone. We disagree.

Although plaintiff claims in his affidavit that he "unabashedly" spoke out regarding Professor Milun, PSOF, Ex. 7 ¶ 23, he has not provided any evidence, apart from his own statement, to support that claim. The record contains no evidence that Lester or any of the decision-makers were aware of plaintiff's alleged activities on Professor Milun's behalf. Indeed, Lester testified that he was unaware that Fuse advocated on behalf of Professor Milun, and plaintiff has submitted no contrary evidence. DSOF, Ex. 2 at 27-28. Plaintiff admits that he discussed Professor Milun with Lester only once as part of a larger conversation in October 2005. PSOF, Ex. 1 at 82-82.

The other two instances in which plaintiff claims he spoke out regarding matters of public concern occurred after February 2006 when Lester made his recommendation not to renew plaintiff's contract.[2] Regardless of whether plaintiff was aware that Lester made his decision in February 2006, plaintiff's subsequent speech could not have formed the basis for that opinion. See Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) ("[A]n employer's decision on a course of action made prior to learning of the employee's protected activity does not give rise to an inference of causation.") (citation omitted). Therefore, considering plaintiff's evidence in context, it is insufficient to create an inference of retaliation based on timing.

---

[2]Although these emails were sent before the Dean and the University Vice Provost accepted Lester's recommendation, plaintiff forwarded these emails to the English Department only, and has not shown any evidence that the Dean or University Vice Provost knew of their existence.

Moreover, defendants again proffer plaintiff's uncooperative behavior as a non-discriminatory reason for the decision not to renew his contract. See EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983) ("[C]ertain forms of 'opposition' conduct, including illegal acts or unreasonably hostile or aggressive conduct, may provide a legitimate independent and nondiscriminatory basis for [an adverse employment action].") (citations omitted). Plaintiff has failed to show any evidence that this reason is a pretext for retaliation. We, therefore, conclude that defendants are entitled to summary judgment on plaintiff's claim for retaliation.

## IV-42 U.S.C. § 1983

Plaintiff has also brings a claim against Lester under 42 U.S.C. § 1983 alleging that Lester violated his First Amendment rights by retaliating against him for speaking out on issues of public concern. A section 1983 claim requires, "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir.1988). Defendants argue that plaintiff cannot show that Lester deprived him of a constitutional right.

The First Amendment protects government employees from termination because of their speech on matters of "legitimate public concern." Pickering v. Bd. of Education, 391 U.S. 563, 571, 88 S. Ct. 1731, 1736 (1968). "[T]o state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quotation omitted). Assuming that plaintiff can show the first two factors, he has not shown any evidence that his speech was a "substantial or motivating factor" in Lester's decision not to recommend renewal.

Plaintiff may show that retaliation was a substantial or motivating factor by introducing evidence: (1) of a close "proximity in time between the protected action and the

allegedly retaliatory employment decision" from which a trier of fact may infer causation; (2) that "his employer expressed opposition to his speech, either to him or to others;" or (3) that "his employer's proffered explanations for the adverse employment action were false and pre-textual." Id. at 977 (quotation omitted). Plaintiff has attempted to show that the jury could infer retaliation from the timing of his complaints regarding the treatment of Professor Milun and the administration and Lester's employment decision and that the stated reason for Lester's decision is pretextual. For the reasons already discussed, both of these arguments fail.

Moreover, the emails and conversation upon which Lester based his non-renewal decision did not involve matters of public concern. Matters of public concern are those that can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983). Whether a public employee's speech addresses a matter of public concern is a question of law. Id. at 148 n.7, 103 S. Ct. at 1690 n.7. When making this determination, we look to the "content, form, and context" of the speech. Id. at 147-48, 103 S. Ct. at 1690. Lester has presented evidence of several confrontations with plaintiff about individual disputes and grievances such as their personal relationship, plaintiff's teaching load, and plaintiff's salary. DSOF, Ex. 5. Looking at the content, form, and context of these emails, they involve idiosyncratic issues related to plaintiff's employment rather than matters of public concern.

## V-Conclusion

Accordingly, **IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 65).

DATED this 21st day of August, 2009.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge